SHEFFEY *et al. v.* BANK OF LEWISBURG *et al.*

*(District Court, D. West Virginia.* December 1, 1887.)

1. EQUITY—REHEARING—RULE 88—FINAL DECREE.

Equity rule 88 provides that "no rehearing shall be granted after the term at which the final decree shall have been entered and recorded." A decree of foreclosure was entered, leaving nothing to be done but execute its provisions. At the next term of the court a petition for rehearing was filed, and upon hearing the decree was ordered to be vacated. *Held* that, as it was a final decree, it was not affected by the order.

2. DEED—RECORDING—PRIORITY.

One G. gave a deed of trust to secure certain debts to the complainants, who recorded it. The same day defendants, five hours later, recorded a deed of trust on the same property from G., given them a month before. *Held,* that in the absence of actual notice of the existence of the former trust deed to the complainants, their deed of trust had the priority.

3. SAME.

One G. made a trust deed to complainants for the benefit of his creditors, providing as preferred debts for vendor's lien judgments and other paramount liens. He had given a trust deed on some of his real estate to defendants, who had not recorded it. *Held,* that it was not a paramount lien at the date of execution of the deed to complainants.

In Equity. Bill to restrain sale of land under a trust deed.

Sheffey and Bumgardner, complainants, filed a bill against the Bank of Lewisburg and others, defendants, to restrain a sale of real estate under a trust deed, claiming they had a prior lien on the land.

*W. A. Quarrier*, for plaintiffs.
*A. F. Mathews*, for defendants.

JACKSON, J. On the eleventh day of October, 1875, Robert J. Glendy executed a deed of trust to the Bank of Lewisburg on a tract of land in Greenbriar county, in this state, to secure to the bank a loan it had made to him of $15,000. The bank held this deed, and did not place it on record, until after another trust deed was executed by Glendy to the complainants in this cause, on the twentieth day of November, 1876, covering the same land. This deed was admitted to record under the registry laws of the state, on the twenty-first day of November, 1876, at 11 o'clock A. M., of that day, while the deed of the Bank of Lewisburg, the defendant in this cause, was not recorded until some five hours after, on the same day. In April, 1877, the trustee under the deed to the bank advertised for sale the lands described in it; but before the sale took place the complainants filed their bill in this case, claiming that they had a prior lien upon the land, and applied to this court for an injunction to restrain the trustee under that deed from making sale until the court could determine the respective rights of the parties under the two trust deeds. The judge of this court, on the third day of May, 1877, passed an order at chambers to restrain the trustee Mathews from selling the property described in the bill until the further order of the court. On the fifteenth day of November, 1877, the bank filed its answer, alleging—*First*, that Sheffey and Bumgardner, trustees under the second deed of trust, had notice of the bank's deed before the execution of the deed to them; *second*, that Sheffey and Bumgardner had such notice before the recordation of the deed; *third*, that by the terms of the deed to Sheffey and Bumgardner the debt due to the bank had priority; and, *fourth*, that the deed to Sheffey and Bumgardner was void on its face.

Nothing further was done in this case until the May term, 1878, when it appears that on the fourth day of May the bank tendered an amended and supplemental answer, setting up the fact that, at the time that Glendy executed the two deeds of trust heretofore referred to, he was not vested with the legal title to the lands upon which he had given the two deeds of trust, and that since the filing of the original answer he had received and recorded his deeds, and had become vested with the legal title, and that since he had become vested with the legal title, the bank had obtained judgment at law against him; and that, under the provisions of the Code of West Virginia, it had obtained priority over the deed of trust to Sheffey and Bumgardner. The filing of this answer was objected to by the complainants, and the objection was sustained; the court holding that the matters set up in it, if true, did not affect the questions at issue in this cause; and for this reason the court perpetuated the injunction, decreed a sale of the lands, and ordered the proceeds to be distributed under the provisions of the Sheffey and Bumgardner deed. At the next term of the court, on the second day of August, 1878, the bank tendered a petition to rehear so much of this decree as refused to allow the supplemental answer to be filed; and the first question that pre-

sents itself for the consideration of the court is, whether this decree was a final or an interlocutory order in this cause. It appears that the consideration of the questions presented by this petition was postponed until the November term of this court in 1885, when the court passed upon them, and entered a decree which vacated and set aside the decree of the fourth day of May, 1878. It is now insisted that the court could not properly make the order vacating that decree, for the reason that it was a final decree disposing of all the questions presented by the pleadings in this cause. The bill filed was mainly for the purpose of settling conflicting rights under two deeds of trust given by the defendant Glendy upon a valuable farm in Greenbriar county,—one to the plaintiffs in this cause, and the other to the defendant the Bank of Lewisburg. The deed to the bank was first executed and delivered, but the deed to the plaintiffs was first duly recorded under the registry laws of the state. The bill made the Bank of Lewisburg, Alexander F. Mathews, and Robert Glendy defendants.

The vital question presented by the pleadings was, which of the two deeds secured the first lien upon the property. For this purpose it was only necessary to have the bank and the trustee before the court, as the plaintiffs were only contesting the right of the bank to assert a prior lien under its trust. When this question was disposed of, all the court had to do was to direct the sale of the property, and distribute the proceeds among the creditors secured by the trust which was ascertained to be the first lien upon the land conveyed, and, if there was any balance after satisfying the creditors secured in that trust, apply such balance to the satisfaction of the debts secured in the second trust. This question being settled, the merits of the controversy as presented by the pleadings were at an end. The decree of May 4, 1878, directed the sale of the land in controversy, distributed the proceeds arising from the sale, and perpetuated the injunction inhibiting the bank from selling under its trust deed. It is obvious that this decree determined the rights of the parties, and was, in effect, a decree of foreclosure of mortgaged premises, leaving nothing to be done except to execute its provisions. Such a decree has always been held by the legal tribunals to be a final decree. That the defendant bank so regarded it is evident from the order it obtained from the court on the second day of August, 1878, tendering "its petition for a rehearing of the order made in the cause of the term before." The petition did not seek to open the decree, only so far as the court had refused the bank permission to file what it termed its amended and supplemental answer, which presented the fact that, at the time that Glendy executed the two trust deeds referred to, he was not vested with the legal title to the lands conveyed, and that the bank had obtained judgment against Glendy, and had the same docketed after he acquired the legal title. The subject-matter of this petition was duly considered at the time, and we see no reason now to change the views we then entertained, and only refer to it to show the conclusive character of the decree as admitted by the petition filed by the bank. If then, this decree is final, as we hold it to be, it is not a subject of review by the court

which passed it after the term at which it was enterered, the time having expired within which, under equity rule 88, a rehearing could be had. That rule expressly declares that "no rehearing shall be granted after the term at which the final decree of the court shall have been entered and recorded." The application of this rule has been frequently the subject of consideration by the supreme court, and in the case of *Roemer* v. *Simon*, 95 U. S. 214, it held that the court which rendered the decree "cannot grant a rehearing after the term at which the final decree was rendered."

It is true, this decree has been vacated for the reason, given by the court at that time, that the beneficiaries, or *cestuis que trust*, were not before the court. Subsequent reflection has not only induced me to change my views upon this question, but it leads me to the conclusion that if there is a want of proper parties before the court, it is an error which can be reached only by an appeal. It follows therefore, that the decree of May 4, 1878, is unaffected by the order entered in August, 1878, at the following term of the court.

I might well rest this case upon this ground, but there is another question which I will briefly consider, for the reason that I regard it as conclusive of the case, and that is, whether the plaintiffs were purchasers with notice. A strong effort has been made to show that the trustee Sheffey had notice of the existence of a trust deed to the bank. Notice must be either actual or constructive. It is not contended that he had constructive notice, and therefore, if he had any, it must have been actual. There is no direct proof of notice, but there is an attempt to show such circumstances as amount to notice. Notice of this charactor must be clearly proved. That no one proves it does not seem to admit of a doubt. It is not sufficient to say that there is a web of circumstances that surround the plaintiff Sheffey in this transaction which tend to fix a strong suspicion of notice upon him. If this were true, then the guilt of fraud would attach to him, which would be unjust, founded on such testimony. It is well settled that, "to affect a purchaser for value of land with notice of an unrecorded deed of trust, the evidence must be sufficient to prove him guilty of a fraud." There is no evidence in the record that tends to fix a fraud upon Sheffey. He is placed on the witness stand, and denies any knowledge of the existence of the bank deed until after the execution and delivery of the deed by Glendy to the plaintiffs. It is true that the evidence of McKinney and Snyder tend to fix upon Sheffey a suspicion of notice of the prior existence of the deed of the bank, but that is not sufficient. Mere suspicion, though strong, proves nothing, and certainly is not sufficient to overthrow the positive evidence of a witness placed on the stand by the defendants, who present him to the court as worthy of credit. Such was the high character of the witness that the defendants waived his sworn testimony in the first instance, and accepted his simple statement in writing as true. It is true that afterwards he was placed on the stand, and his testimony taken pursuant to law, but the court fails to perceive that there is any material difference between his testimony under oath and his statement made

when not under oath. It follows that there is a want of sufficient notice to affect the purchaser who claims under the second deed of trust; and, inasmuch as the second deed was first recorded, the statute gives it priority in the absence of actual notice to the trustees before its execution. The plaintiffs in this cause claim under the trust that was first recorded, and the burden of proof is on the defendants to establish notice to affect their rights under that trust. This they have failed to do, and for this reason, as well as the one first assigned, the court is of opinion that the decree heretofore passed on the fourth day of May, 1878, should stand as its judgment.

It is claimed, however, that the debt due the bank was intended by Glendy to be secured by the trust deed of November 20, 1876, as a preferred debt, along with the vendor's liens, judgments, and other paramount liens mentioned and secured in said deed, and entitled to preference over the general creditors. Clearly this debt is not embraced by either of the first two classes referred to. If it is secured under this trust, it must be under the class named as "Paramount Liens." What, then, is a paramount lien? It is a lien that must exist at the time of the execution of the deed. That it did not exist so as to affect either purchasers or creditors without notice cannot be controverted. The deed to the bank, unrecorded, without notice, was only good as between it and Glendy. It was neither prior in point of time, nor superior in point of dignity, to any of the debts secured by the trust deed to the plaintiffs. To make the bank debt a paramount lien under the deed of trust of November 20, 1876, it must have been a valid lien at the date of its execution. This deed did not create paramount liens; it only recognized existing liens made paramount by law. This was clearly the purpose of the grantor, for he recites in his deed that "he owed many and large debts which he desired to secure, and at the same time to prevent any of his creditors from getting priorities over others, and to place his creditors on a footing of entire equality." It is obvious that the grantor, Glendy, did not intend by his deed to create a preference among his creditors. He intended, so far as he could, to place them in the position the law gave them. He could not have forgotten the bank debt, and if he desired to give it a preference he could have easily done so. He did not do it, but left it to its legal fate. It was a secret trust, and clearly void as to creditors and purchasers for value without notice. That the plaintiffs were purchasers for value without notice, we cannot doubt. The question of notice we have before disposed of, and it is now the settled law that a trustee is a *bona fide* purchaser until the contrary is shown. Such, we hold the plaintiffs to be at the time the deed was made to them.

Other questions have been presented and ably discussed, but it is unnecessary to consider them, as the points ruled dispose of the case. It follows that the decree entered on May 4, 1878, stands unaffected, and that the exceptions to the master's amended or second report are overruled.